UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| KERRI JOSEPH MALLOY,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No.: 1:12-cv-01388-NJV<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING CASE FOR FURTHER CONSIDERATION; OTHERWISE DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT WITHOUT PREJUDICE.**<br><br>**(Doc. Nos. 16 & 17)** |

**INTRODUCTION**

Kerri Malloy seeks judicial review of an administrative law judge ("ALJ") decision dated February 25, 2011 (the "February 2011 decision"). Doc. No. 1. The February 2011 decision denied Malloy's application for Social Security disability benefits. *Id*. Pursuant to the Social Security Act, this court has subject matter jurisdiction over a final decision by the Commissioner of Social Security. 42 U.S.C. § 405(g); *see Bass v. Social Security Admin*., 872 F.2d 832, 833 (9th Cir. 1989). The February 2011 decision became the Commissioner's final decision when the Appeals Council denied Malloy's request for review on February 28, 2012. *See* Doc. No. 17 at 1. Both parties have consented to proceeding before a magistrate judge. Doc. Nos. 4 & 7. This court's review of the February 2011 decision is therefore appropriate.

For the reasons set forth below, the court grants in part Malloy's motion for summary judgment and remands the case to the ALJ for further administrative proceedings consistent with

this opinion; the court otherwise denies the parties' cross-motions for summary judgment, without prejudice.

## FACTUAL BACKGROUND

Malloy has experienced muscle fatigue and muscle twitches for many years. Administrative Record ("AR") 272, 296. As a child, he suffered knee and ankle pain so severe it woke him in the night. AR 542. Doctors found no abnormalities. AR 541. Malloy suffered fatigue and "extreme cramps in [his] lower legs that would bring [him] to the floor and crying fits" until he was twelve, but went to school and attended college. AR 76, 191. Malloy worked for various employers from 1993 to 2006. AR 168, 192. By 2004, he needed a bed or couch at work to rest throughout his shift as needed, and his employer transferred some of Malloy's duties to another employee. AR 282 (describing accommodations and noting that "Mr. Malloy's medical condition was common knowledge to all managers of the [Inn] during his tenure there"). Despite these accommodations, Malloy eventually became physically unable to perform his duties and he resigned in 2006. AR 84-85, 282. He then went into business for himself, opening a hot dog stand. AR 85, 202. That business failed in June 2008, and Malloy has not been employed since that time. AR 191.

Over the years, Malloy was unable to identify the cause of his fatigue and muscle pain. Malloy "noticed an acceleration of his symptoms" starting around 2007. AR 457. In December 2008, Malloy's primary care physician recorded his symptoms: "[Patient] states he experiences weakness while walking, drops items regularly. . . difficulty raising foot at times and going up stairs . . . fasciculation in his arms/legs and experiences muscle cramps in his calves/shoulders. [Patient] states he is tired of feeling this way and would like to get to the bottom of his symptoms." AR 338; *see also* AR 341-43 (patient complains of "pins and needles on a 3/10 pain scale" in his arms and occasionally in his feet and legs and of blurry vision). His doctor ordered an MRI; the results of that exam were normal. AR 362. Malloy began mental counseling in January 2009 "when [his] body started showing changes in functioning which included an inability to work competitively (8 hr. shifts) [and] difficulty socializing normally due to pain and fatigue." AR 370. In February 2009, a neurologist opined that Malloy suffered from a "very

slowly progressive muscular process, possibly a congenital myopathy" and referred him to an expert for further evaluation. AR 353-55; AR 355 ("I am really quite sure there is something going on with this young man and has been his whole life"). An EMG and nerve conduction tests revealed the existence of carpal tunnel syndrome but were otherwise normal. AR 291-292 ("I am unable to suggest a neurological diagnosis"). In August 2009, a muscle biopsy revealed no significant abnormalities. AR 288-289.

Molloy's symptoms continued to worsen. AR 272, 385. Throughout 2009 and 2010, Malloy complained of pain up to 7 on a scale of 10, debilitating fatigue, and depression. AR 385-403, 497-518. In March 2010, a rehabilitation specialist noted "substantial impediments to employment," including "fatigue, muscle spasms, pain, numbness and tingling, cramps, difficulty with walking long distances, sometimes uses cane for walking." AR 366. Malloy was diagnosed with Adjustment Disorder with Anxiety and Muscle Disorders (Fibromyalgia, Liver Disorder, Chronic Pain). AR 370. On July 26, 2010, Malloy's primary care physician certified that he was unable to work due to "debilitating fatigue," noted that he was "unable to stand/sit/drive for extended periods," and that he walked with a cane. AR 491. By September 2010, he was experiencing "significant impairment of day to day life due to both [physical] and mental issues." AR 529. A December 2010 x-ray revealed "likely bilateral L5 pars defects" and "mild degenerative disc disease in the lower thoracic and upper lumbar spine." AR 521.

## PROCEDURAL BACKGROUND

Malloy initially applied for Social Security Disability benefits on January 30, 2010, and for Supplemental Security Income ("SSI") on October 13, 2010. AR 162-63, 178-85. (He originally alleged an onset date of disability of August 23, 2009, but subsequently amended his application to allege an earlier onset date of October 1, 2008.) He alleged that he suffered from severe fatigue, muscle spasms, joint and muscle pain, and muscle tenderness. AR 190 (Jan. 30, 2010 Disability Report); *see also* AR 199-201 (Exertion Questionnaire), AR 538 (Malloy's treating physician opined that Malloy "has a muscle disorder … which causes him extreme muscle fatigue after standing or sitting for 3 or more hours at a time"). His application was

denied initially and on reconsideration. AR 152 (April 7, 2010 Notice of Disapproved Claims), AR 157 (September 7, 2010 Notice of Reconsideration).

Malloy requested a hearing before an ALJ. AR 142-43. The hearing took place on January 25, 2011, and the ALJ denied his claim on February 25, 2011. AR 15-31. The ALJ found that Malloy had a severe psychological impairment (mood disorder with related adjustment disorder and anxiety), but that Malloy had sufficient residual capacity to perform light work and thus was not disabled. AR 22-28. The ALJ concluded that Malloy's physical problems were not severe, individually and in combination with other impairments. AR 21.

Malloy's treating physician had opined that Malloy suffered from a muscle disorder that caused him extreme muscle fatigue after standing or sitting for three or more hours at a time. AR 538. The ALJ gave this opinion "little weight" because it was "conclusory and provided no explanation of the evidence relied on in forming [it.]" AR 24. He also found the opinion was "inconsistent with the objective medical findings in the record, including the normal muscle biopsy [and the EMG and nerve conduction tests.]" AR 24. The consulting psychological examiner opined that Malloy would have difficulty performing simple and complex tasks, would need special assistance to perform work on a consistent basis, and that his workday could be expected to be interrupted by his psychiatric condition (depression), and that his ability to manage stress effectively was low. AR 467-470. The ALJ gave "little weight" to the consulting psychological examiner's opinion because it was "inconsistent with the record as a whole." AR 24. An impartial orthopedic medical expert testified that Malloy did not have a medically determinable impairment that met or equaled a listing. AR 25; *see also* Doc. No. 17 at 4 ("As noted by [the orthopedic expert,] if Plaintiff's complaints of severe fatigue were credible, it would be expected to be seen in the muscle biopsy"). The ALJ found that the orthopedic expert's opinion was "supported by the medical evidence of record" and thus afforded it "great weight." AR 25.

On appeal to this court, Malloy contends that new evidence establishes that his physical impairment is severe and that he is disabled. Malloy further contends that the ALJ erred in dismissing the opinions of his treating physician and consultative examiner. Doc. No. 16. Malloy

4

asks the court to reverse the ALJ's decision and award benefits, or in the alternative, to remand the case to the ALJ so that the closed period can be adjudicated appropriately. Doc. No. 20 at 7.

## DISCUSSION

**A.     Malloy Obtains New Evidence Regarding His Physical Impairment.**

After the ALJ issued the February 2011 decision, Malloy took more diagnostic tests and had an additional neurological consultation. AR 547-48, 550-52. These new tests revealed physical abnormalities. A May 2011 MRI exam revealed "left lateral L5-S1 disc protrusion with stenosis of the left L5-S1 neural foraminal recess and neural foramina." AR 547; *see also* AR 551 (neurologist finds MRI demonstrates "left L3-4 lateral and foraminal narrowing. L5-S1 disc herniation lateral stenosis and a left small synovial cyst without stenosis"). A June 2011 EMG study documented "chronic L5 bilateral radiculopathy and chronic S1 left radiculopathy." AR 550. Based on his review of the May 2011 MRI results and the June 2011 EMG study, the neurologist's assessment of Malloy was "lumbago, lumbar disc degeneration, herniated lumbar disc, [and] lumbar radiculopathy." AR 552. Malloy submitted this new evidence to the Appeals Council. AR 14. The Appeals Council summarily denied Malloy's request for review. AR 1 (February 28, 2012 Notice).

Malloy filed new claims for Social Security Disability benefits and SSI in March and August 2011, alleging that he was unable to work due to (*inter alia*) mood and muscle disorders, chronic fatigue, pain, difficulty walking, and attaching the new medical records and diagnosis. Doc. No. 16 at 3 & Ex. 1. The Social Security Administration ("SSA") concluded that Malloy met its medical rules to qualify for benefits, with an onset date of February 26, 2011, the day after the ALJ's decision. *Id*.

**B.     Malloy's Application Must Be Remanded In Light Of New Evidence.**

Under the Social Security Act, "the court . . . may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). "New evidence is material if it 'bears directly and substantially on the matter in dispute,' and if there is a 'reasonable possibility that the new

evidence would have changed the outcome of the . . . determination.'" *Bruton v. Massanari*, 268 F.3d 824, 827 (9th Cir. 2001) (quoting *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984)). In this instance, however, the good cause requirement does not apply because the new evidence was presented to the Appeals Council and became part of the AR. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1164 (9th Cir. 2012) (the "good cause" requirement "only applies to new evidence that is not part of the [AR] and is presented in the first instance to the district court"); *Palomares v. Astrue*, 2012 U.S. Dist. LEXIS 114000, *23-*25 (N.D. Cal. Aug. 13, 2012) (applying *Brewes*).[1]

In light of the materiality of the new evidence, remand is appropriate. *See Taylor v. Comm'r of Soc. Sec.*, 659 F.3d 1228, 1235 (9th Cir. 2011) ("Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated").

First, an objective diagnosis identifying a physical condition that could provide a basis for Malloy's claim of disability "bears directly and substantially on the matter in dispute."

---

[1] Even if the "good cause" requirement applied here, Malloy has met that requirement. "A claimant does not meet the good cause requirement by merely obtaining a more favorable report once his or her claim has been denied. To demonstrate good cause, the claimant must demonstrate that the new evidence was unavailable earlier." *Mayes v. Massanari*, 276 F.3d 453, 463 (9th Cir. 2001) (citing *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985)). The good cause requirement is satisfied if the claimant could not have obtained the new evidence at the time of the administrative proceeding. *Burton v. Heckler*, 724 F.2d 1415, 1417-18 (9th Cir. 1984); *see also Mora v. Astrue*, 2012 U.S. Dist. LEXIS 134239, *14 n.2 (N.D. Cal. Sep. 19, 2012) (citing *Burton* and finding good cause existed to remand case based on new evidence where the evidence did not exist at time of initial disability determination and Commissioner would not suffer prejudice due to remand). The good cause requirement is liberally applied where there is no indication that a remand for consideration of new evidence will result in prejudice to the defendant. *Burton*, 724 F.2d at 1417-18. Malloy did not obtain the new MRI or EMG results nor the new neurologist's diagnosis until after the ALJ heard this case and issued his decision. Nor did Malloy obtain the second positive SSA decision until after the ALJ issued the February 2011 decision. Moreover, Defendant does not dispute that good cause exists. The fact the evidence did not exist at the time of the ALJ's decision established good cause for the claimant's failure to introduce it before the ALJ. *Id*. To the extent that good cause is necessary in this instance, the court finds that Plaintiff has demonstrated that good cause exists to support remand under Section 405(g).

6

Second, there is a reasonable possibility that Malloy's diagnosis would have changed the outcome of the ALJ's determination. The ALJ repeatedly emphasized the fact that no physician had been able to diagnose Malloy's physical condition. *See* AR 21 ("[H]is muscle impairment was undefined and undiagnosed due to no objective basis found for it"); AR 24 (Malloy's "complaints of muscle weakness have been well-explored medically, including with muscle biopsies and all tests have been negative for any organic or objective basis for those complaints"); AR 79 ("[W]e have to have medically determinable impairments. And what that means is that you have to have an impairment or physical problem, which can be determined objectively, and generally that means by x-rays or physical tests or laboratory tests or something else like that . . . I have to know what the cause of it is. And if we can't figure out what the cause is – and I've read through an awful lot of tests that you've had, all of which are negative – so based on the objective information, it appears, you know, we don't have a lot of support for" claims of a physical impairment). In light of the ALJ's focus on the absence of a diagnosis explaining the source of Malloy's symptoms, the undersigned concludes that there is a reasonable possibility that a diagnosis of Malloy's physical condition would have changed the outcome of the ALJ's determination. In particular, a diagnosis might cause the ALJ to assign more weight to the opinions of the treating physicians and the examining physician, especially if the diagnosis affected the opinion of the independent orthopedic expert (*see* AR 102-104). A diagnosis might also cause the ALJ to find Malloy's testimony regarding the severity of his symptoms more credible. This conclusion is reinforced by the fact that the SSA, in a second decision, found that Malloy met the medical rules to qualify for disability benefits, and found that he became disabled on February 26, 2011 – the day after the February 2011 decision. Doc. No. 16, Ex. 1.[2]

Defendant's arguments that the new evidence does not warrant remand are not well taken. Defendant argues that the new evidence does not relate to the period on or before the date of the ALJ hearing. Doc. No. 17 at 7. While Malloy did not obtain the new MRI and EMG results and the new neurologist's diagnosis until after the issuance of the February 2011 decision (AR 547-

---

[2] Malloy also must meet non-medical rules to qualify for benefits, and the SSA notes it will determine whether Malloy meets these rules "soon." Doc. No. 15, Ex. 1 at 2.

7

48, 550-52), the record does not address whether the abnormalities revealed by that evidence existed at the time of the ALJ hearing or developed in a later period. The ALJ must make that determination, not this court. Similarly, Defendant argues that the new evidence does not disturb the ALJ's assessment of Malloy's residual capacity function. Doc. No. 17 at 7. But the ALJ's assessment of Malloy's RFC was based solely on Malloy's mental condition; it did not take into account the physical condition to which the new evidence relates. *See* AR 23. The ALJ gave little weight to the opinion of Malloy's treaters regarding his physical conditions because one was "conclusory and provided no explanation of the evidence relied on in forming his opinion" and the other was "inconsistent with the objective medical findings in the record." AR 24. The ALJ rejected Malloy's testimony to the extent it was inconsistent with the assessment. *See id*. Thus, the new evidence could disturb the ALJ's assessment of Malloy's RFC if it causes him to give more weight to the opinions of Malloy's treaters or to Malloy's testimony.

Upon remand, the ALJ shall consider the new evidence in assessing whether Malloy's physical impairment is severe, and whether it (alone or in combination) meets or equals a listed impairment. If necessary, the ALJ shall reassess Malloy's RFC and finalize the five-step sequential evaluation process established by the SSA. If, after considering the new evidence, the ALJ concludes there is still a conflict in the medical testimony and continues to reject the opinion of Malloy's treaters or examining physicians, he shall provide clear and specific reasons for his renewed rejection of the medical opinions. *See generally Lobato v. Astrue*, 2011 U.S. Dist. LEXIS 116478, *32-*36 (N.D. Cal. Oct. 7, 2011) (conclusory reasons do not justify an ALJ's rejection of medical opinions).

## CONCLUSION

The ALJ did not fully consider the medical evidence regarding Malloy's claimed physical impairment. The evidence may alter the ALJ's conclusions, including his assessment of Malloy's credibility and the testimony of the treating and examining physicians. This in turn may affect the ALJ's conclusions regarding the severity of Malloy's impairment, his RFC, and ultimately, his disability. The court concludes that the case should be remanded for further administrative

proceedings. The remainder of the parties' motions for summary judgment shall be addressed, if necessary, after the ALJ has reassessed the AR in light of the new evidence.

Accordingly, IT IS HEREBY ORDERED that:

1) Malloy's motion for summary judgment is granted in part and denied without prejudice in part;
2) Defendant's motion for summary judgment is denied without prejudice;
3) This case is remanded for reconsideration of Malloy's 2010 application as applied only to the closed period of October 1, 2008 to February 25, 2011; and,
4) The Clerk of the Court is directed to close the file.

Dated: January 15, 2013

_____
Nandor J. Vadas
United States Magistrate Judge

9